JUDGE STANTON

UNITED STATES DISTRICT COURT **12 CIV 7938**
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL BHIM, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff,

v.

OVERSEAS SHIPHOLDING GROUP,
INC., MORTEN ARNTZEN, and MYLES
R. ITKIN,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No.

**CLASS ACTION**

**COMPLAINT FOR VIOLATION OF
THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

---

Plaintiff Michael Bhim ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the

following based upon personal knowledge as to himself and his own acts, and information and

belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

his attorneys, which included, among other things, a review of the defendants' public documents,

conference calls and announcements made by defendants, United States Securities and Exchange

Commission ("SEC") filings, wire and press releases published by and regarding Overseas

Shipholding Group, Inc. ("Overseas Shipholding" or the "Company"), analysts' reports and

advisories about the Company, and information readily obtainable on the Internet. Plaintiff

believes that substantial evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all

persons other than defendants who purchased or otherwise acquired Overseas Shipholding

securities between May 4, 2009 and October 19, 2012, both dates inclusive (the "Class Period"),

seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.      Overseas Shipholding maintains a fleet of marine transport vessels.    The Company charters its ships to oil companies, traders and governmental agencies.    The Company's ships transport crude oil, refined petroleum products and gas.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company improperly accounted for certain tax liabilities arising from the fact that it is domiciled in the United States and has substantial international operations, and relating to the interpretation of certain provisions contained in its loan agreements; (ii) the Company lacked adequate internal and financial controls; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

4.      On October 3, 2012, the Company disclosed the resignation of a Board member due to "a disagreement with the Board as to the process the Board is taking in reviewing a tax issue."

5.      On this news, Overseas Shipholding stock declined $0.26 per share or 3.6%, to close at $6.82 per share on October 3, 2012.

6.      On October 16, 2012, it was reported in the media that the Company might be facing a liquidity squeeze and its Chief Executive Officer confirmed that the Company had hired a financial adviser and was in talks with its lenders.

7.      On this news, Overseas Shipholding stock declined $1.77 per share or over 34% within two trading sessions, to close at $3.40 per share on October 17, 2012.

8.      On October 22, 2012, the Company disclosed that it was reviewing a tax issue arising from it being domiciled in the United States and having substantial international operations, and relating to the interpretation of provisions in its loan agreements.  Moreover, the Company's Audit Committee concluded that the financial statements for at least the three years ended December 31, 2011 and associated interim periods, and for the quarters ended March 31 and June 30, 2012, should no longer be relied upon and is evaluating if it will need to restate for those periods.   The Company further disclosed that it is negotiating with creditors and is evaluating its strategic options including filing for bankruptcy.

9.      On this news, Overseas Shipholding stock declined $2.02 per share or 62%, to close at $1.23 per share on October 22, 2012.

10.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

13.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as Overseas Shipholding's principal place of business is located within this District.

3

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff as set forth in the attached Certification, acquired Overseas Shipholding securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.     Defendant Overseas Shipholding is a Delaware corporation with its principal executive offices located at 666 Third Avenue, New York 10017.   Overseas Shipholding's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "OSG."

17.     Defendant Morten Arntzen ("Arntzen") was, at all relevant times, the Company's the President and Chief Executive Officer.

18.     Defendant Myles R. Itkin ("Itkin") was, at all relevant times, the Company's Chief Financial Officer, Executive Vice President and Treasurer.

19.     The defendants referenced above in ¶¶ 17 and 18 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Overseas Shipholding is one of the world's leading tanker companies engaged primarily in the ocean transportation of crude oil and petroleum products. At December 31, 2011, the Company owned or operated a modern fleet of 111 double hulled vessels (aggregating 10.9 million deadweight tons and 864,800 cubic meters) of which 89 vessels operated in the international market and 22 operated in the U.S. Flag market.  OSG's new building program of

owned and chartered-in vessels totaled five International Flag vessels, bringing the Company's total owned, operated and new build fleet to 116 double-hulled vessels. The Marshall Islands is the principal flag of registry of the Company's International Flag vessels. The Company's vessel operations are organized into strategic business units and focused on broad market segments: crude oil, and refined petroleum products. The International Flag Crude Tanker unit manages International Flag ULCC, VLCC, Suezmax, Aframax, Panamax and Lightering tankers; the International Flag Product Carrier unit principally manages LR1 and MR product carriers and the U.S. unit manages the Company's U.S. Flag vessels.

### Materially False and Misleading
### Statements Issued During the Class Period

21.     On May 4, 2009, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended March 31, 2009. For the quarter, the Company reported net income of $121.8 million, or $4.53 diluted earnings per share ("EPS") and revenue of $325 million, as compared to net income of $112 million, or $3.61 diluted EPS and revenue of $411 million for the same period a year ago.

22.     On May 6, 2009, the Company filed a quarterly report for the period ended March 31, 2009 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On August 5, 2009, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended June 30, 2009. For the quarter, the

Company reported a net loss of $8.8 million, or $(0.33) diluted EPS and revenue of $283 million, as compared to net income of $87 million, or $2.81 diluted EPS and revenue of $428 million for the same period a year ago.

24.     On August 10, 2009, the Company filed a quarterly report for the period ended June 30, 2009 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25.     On November 2, 2009, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended September 30, 2009.  For the quarter, the Company reported a net loss of $20 million, or $(0.73) diluted EPS and revenue of $244 million, as compared to net income of $198 million, or $6.69 diluted EPS and revenue of $473 million for the same period a year ago.

26.     On November 6, 2009, the Company filed a quarterly report for the period ended September 30, 2009 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     On March 1, 2010, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2009. For the quarter, the Company reported a net loss of $23 million, or $(0.86) diluted EPS and revenue of $243 million, as compared to a net loss of $80 million, or $(2.89) diluted EPS and revenue of $393 million for the same period a year ago.  For the year, the Company reported net income of $70 million, or $2.61 diluted EPS and revenue of $1.1 billion, as compared to net income of $318 million, or $10.65 diluted EPS and revenue of $1.7 billion for the same period a year ago.

28.     That same day, the Company filed an annual report for the period ended December 31, 2009 on a Form 10-K with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     On May 4, 2010, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended March 31, 2010. For the quarter, the Company reported a net loss of $9.4 million, or $(0.34) diluted EPS and revenue of $270 million, as compared to net income of $121.8 million, or $4.53 diluted EPS and revenue of $325 million for the same period a year ago.

30.     On May 7, 2010, the Company filed a quarterly report for the period ended March 31, 2010 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants

7

Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.   On August 3, 2010, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended June 30, 2010. For the quarter, the Company reported a net loss of $38 million, or $(1.26) diluted EPS and revenue of $284 million, as compared to a net loss of $8.8 million, or $(0.33) diluted EPS and revenue of $283 million for the same period a year ago.

32.   On August 6, 2010, the Company filed a quarterly report for the period ended June 30, 2010 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

33.   On November 2, 2010, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended September 30, 2010. For the quarter, the Company reported a net loss of $32 million, or $(1.06) diluted EPS and revenue of $260 million, as compared to a net loss of $20 million, or $(0.73) diluted EPS and revenue of $244 million for the same period a year ago.

34.   On November 5, 2010, the Company filed a quarterly report for the period ended September 30, 2010 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the

SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     On February 28, 2011, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2010. For the quarter, the Company reported a net loss of $55 million, or $(1.83) diluted EPS and revenue of $232 million, as compared to a net loss of $23 million, or $(0.86) diluted EPS and revenue of $243 million for the same period a year ago.  For the year, the Company reported a net loss of $134 million, or $(4.55) diluted EPS and revenue of $1 billion for the same period a year ago, as compared to net income of $70 million, or $2.61 diluted EPS and revenue of $1.1 billion for the same period a year ago.

36.     On March 1, 2011, the Company filed an annual report for the period ended December 31, 2010 on a Form 10-K with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.     On May 3, 2011, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended March 31, 2011. For the quarter, the Company reported a net loss of $35 million, or $(1.15) diluted EPS and revenue of $264 million, as compared to a net loss of $9.4 million, or $(0.34) diluted EPS and revenue of $270 million for the same period a year ago.

38.     On May 5, 2011, the Company filed a quarterly report for the period ended March 31, 2011 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.     On August 2, 2011, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended June 30, 2011.  For the quarter, the Company reported a net loss of $37 million, or $(1.24) diluted EPS and revenue of $272 million, as compared to a net loss of $38 million, or $(1.26) diluted EPS and revenue of $284 million for the same period a year ago.

40.     On August 5, 2011, the Company filed a quarterly report for the period ended June 30, 2011 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41.     On November 1, 2011, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended September 30, 2011.  For the quarter, the Company reported a net loss of $71 million, or $(2.35) diluted EPS and revenue of $256 million, as compared to a net loss of $32 million, or $(1.06) diluted EPS and revenue of $260 million for the same period a year ago.

10

42.     On November 4, 2011, the Company filed a quarterly report for the period ended September 30, 2011 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

43.     On February 28, 2012, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter and year ended December 31, 2011. For the quarter, the Company reported a net loss of $50 million, or $(1.65) diluted EPS and revenue of $258 million, as compared to a net loss of $55 million, or $(1.83) diluted EPS and revenue of $232 million for the same period a year ago. For the year, the Company reported a net loss of $193 million, or $(6.39) diluted EPS and revenue of $1 billion, as compared to a net loss of $134 million, or $(4.55) diluted EPS and revenue of $1 billion for the same period a year ago.

44.     On February 29, 2012, the Company filed an annual report for the period ended December 31, 2011 on a Form 10-K with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     On May 1, 2012, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended March 31, 2012. For the quarter, the

Company reported a net loss of $35 million, or $(1.15) diluted EPS and revenue of $292 million, as compared to a net loss of $35 million, or $(1.15) diluted EPS and revenue of $264 million for the same period a year ago.

46.     On May 7, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

47.     On August 1, 2012, Overseas Shipholding issued a press release announcing its financial and operating results for the quarter ended June 30, 2012. For the quarter, the Company reported a net loss of $55 million, or $(1.83) diluted EPS and revenue of $291 million, as compared to a net loss of $37 million, or $(1.24) diluted EPS and revenue of $272 million for the same period a year ago.

48.     On August 7, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on a Form 10-Q with the SEC, which was signed by Defendants Arntzen and Itkin, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the SOX by Defendants Arntzen and Itkin, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

49.     The statements referenced in ¶¶ 21-48 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which

12

were known to defendants or recklessly disregarded by them, including that: (i) the Company improperly accounted for certain tax liabilities arising from the fact that it is domiciled in the United States and has substantial international operations, and relating to the interpretation of certain provisions contained in its loan agreements; (ii) the Company lacked adequate internal and financial controls; and (iii) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

### THE TRUTH BEGINS TO EMERGE

50.     On October 3, 2012, the Company filed a Form 8-K with the SEC disclosing the resignation of G. Allen Andreas III, as a member of its Board of Directors.  The Form 8-K contained Andreas's resignation letter where he explained that his resignation resulted "from a disagreement with the Board as to the process the Board is taking in reviewing a tax issue." Additionally, the Form 8-K noted the following in relevant part:

> The tax issue referenced in Mr. Andreas's letter arises from the fact that the Company is domiciled in the United States and has substantial international operations, and relates to the interpretation of certain provisions contained in the Company's loan agreements.
>
> Upon completion of the review process, which involves consultation with its professional advisors, the Company will make any additional disclosures deemed appropriate.

51.     On this news, Overseas Shipholding stock declined $0.26 per share or 3.6%, to close at $6.82 per share on October 3, 2012.

52.     On October 16, 2012, it was reported in the media that the Company could be facing a liquidity squeeze and Defendant Arntzen confirmed that the Company had hired a financial adviser and was in talks with its lenders.

53.     On this news, Overseas Shipholding stock declined $1.77 per share or 34%, over two trading sessions, to close at $3.40 per share on October 17, 2012.

13

54.     On October 22, 2012, the Company filed a Form 8-K with the SEC stating the

following in relevant part:

> As previously disclosed in a Current Report on Form 8-K filed on October 3, 2012,
> Overseas Shipholding Group Inc. (the "Company") is in the process of reviewing a
> tax issue arising from the fact that the Company is domiciled in the United States and
> has substantial international operations, and relating to the interpretation of certain
> provisions contained in the Company's loan agreements. As a result of that
> continuing process, on October 19, 2012, the Audit Committee of the Board of
> Directors of the Company, on the recommendation of management, concluded that
> the Company's previously issued financial statements for at least the three years
> ended December 31, 2011and associated interim periods, and for the fiscal quarters
> ended March 31 and June 30, 2012, should no longer be relied upon. The Audit
> Committee and authorized officers have informed the Company's independent
> registered public accountants of this conclusion. The Company is continuing its
> review processes, including determining whether a restatement of those financial
> statements may be required, and the nature and amount of any potential restatement.
> In connection with these matters and other matters, including negotiations with its
> bank creditors, the Company is evaluating its strategic options, including the potential
> voluntary filing of a petition for relief to reorganize under Chapter 11 of the
> Bankruptcy Code.

55.     On this news, Overseas Shipholding stock declined $2.02 per share or over 62%,

to close at $1.23 per share on October 22, 2012.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Overseas Shipholding securities during the Class Period (the "Class"); and

were damaged thereby. Excluded from the Class are defendants herein, the officers and directors

of the Company, at all relevant times, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which defendants have or had a

controlling interest.

57.     The members of the Class are so numerous that joinder of all members is

impracticable.  Throughout the Class Period, Overseas Shipholding securities were actively

traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Overseas Shipholding or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

58.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

59.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

60.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Overseas Shipholding;

- whether the Individual Defendants caused Overseas Shipholding to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Overseas Shipholding securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

61.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

62.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Overseas Shipholding securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Overseas Shipholding securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

63.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Overseas Shipholding securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Overseas Shipholding securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

67.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

17

influence the market for Overseas Shipholding securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Overseas Shipholding's finances and business prospects.

68.     By virtue of their positions at Overseas Shipholding, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Overseas Shipholding securities from their personal portfolios.

70.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Overseas Shipholding, the Individual Defendants had knowledge of the details of Overseas Shipholding's internal affairs.

71.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

Overseas Shipholding. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Overseas Shipholding's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Overseas Shipholding securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Overseas Shipholding's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Overseas Shipholding securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

72. During the Class Period, Overseas Shipholding securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Overseas Shipholding securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Overseas Shipholding securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Overseas Shipholding securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

19

73.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

75.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.    During the Class Period, the Individual Defendants participated in the operation and management of Overseas Shipholding, and conducted and participated, directly and indirectly, in the conduct of Overseas Shipholding's business affairs.  Because of their senior positions, they knew the adverse non-public information about Overseas Shipholding's misstatement of income and expenses and false financial statements.

77.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Overseas Shipholding's financial condition and results of operations, and to correct promptly any public statements issued by Overseas Shipholding which had become materially false or misleading.

78.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Overseas Shipholding disseminated in the marketplace during the Class Period concerning Overseas Shipholding's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Overseas Shipholding to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Overseas Shipholding within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Overseas Shipholding securities.

79.     Each of the Individual Defendants, therefore, acted as a controlling person of Overseas Shipholding. By reason of their senior management positions and/or being directors of Overseas Shipholding, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Overseas Shipholding to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Overseas Shipholding and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

80.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Overseas Shipholding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 23, 2012                     Respectfully submitted,

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**

By:_____
Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184

***Attorneys for Plaintiff***

# Certification of Plaintiff
# Pursuant to Federal Securities Laws

1.   I, Michael Bhim, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.   I have reviewed a Complaint against Overseas Shipholding Group Inc. ("OSG"), and authorize a filing of a comparable complaint on my behalf.

3.   I did not purchase my OSG securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.   I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my purchases and sales in OSG securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.   The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed** <u>10/23/12</u>, **at** <u>OZONE PARK, New York</u>
      **(Date)**              **(City, State)**

<u>Michael Bhim</u>
      **(Signature)**

<u>MICHAEL BHIM</u>
      **(Type or Print Name)**

## Summary of Purchases and Sales

| DATE | TRANSACTION TYPE: PURCHASE OR SALE | NUMBER/ TYPE OF SECURITY | PRICE OF SECURITY |
|---|---|---|---|
| 10/14/12 | PURCHASE | 4000 | $5.40 |
| 10/16/12 | SALE | 4000 | $4.12 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |